NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BEVERLY MENTOR, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 08-CV-1173 (DMC) |
| | : | |
| HILLSIDE BOARD OF EDUCATION, | : | |
| | : | |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant Hillside Board of Education ("Defendant," or the "Board ") for summary judgment pursuant to Fed. R. Civ. P. 56(c). Pursuant to Fed. R. Civ. P 78, no oral argument was heard. After considering the submissions of the parties, and for the reasons set forth below, Defendant's motion for summary judgment is **granted**.

## I.   BACKGROUND

This matter arises out of claims by *pro se* Plaintiff Beverly Mentor ("Plaintiff") that she suffered adverse employment actions, including, *inter alia*, reduced hours, transfer to another school, and termination due to her race. Plaintiff was hired by Defendant in November 2003, to work as a lunch aide for two hours per day at the Calvin Coolidge School ("Calvin Coolidge"). In 2004, Plaintiff alleges that she was offered two additional positions at Calvin Coolidge as both a bus aide and a morning aide. Plaintiff was hired for these additional positions by former principal Ellen

Decker ("Decker").  It is unclear, however, whether the Board formally approved Plaintiff's hiring, or whether it was done through an informal process by Decker.  In April 2006, Decker died and Grace Conway ("Conway") and Dr. Frank Deo ("Deo") were appointed co-interim principals.  The new leadership became aware that Plaintiff was working more than the twenty hour weekly maximum allotted for aides.  Conway became concerned due to the fact that district employees working more than twenty hours per week become eligible for health benefits.  Nonetheless, because the school year was nearly complete, the Board permitted Plaintiff to finish the school year without reducing her hours.

Plaintiff was not a tenured staff member, and each employment agreement she signed covered one school year only.  Following the 2005-2006 school year, Plaintiff was notified by the Board that her hours would be reduced to the standard twenty hours per week allotted for aides, and that she would be transferred at the same salary to Hurden Looker, another school in the district.  The Board claims that Plaintiff was transferred due to acts of unprofessional conduct and to avoid any confrontations arising from the attendance of her daughter at Calvin Coolidge.  Specifically, the Board cites two incidents as allegedly leading to Plaintiff's transfer: one involving a confrontation between Plaintiff and another parent over alleged bullying of Plaintiff's daughter; the other when Plaintiff brought her older child to Calvin Coolidge to participate in field day.

On September 14, 2006, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based upon her hours reduction and transfer to Hurden Looker.  Plaintiff also claims that she was discriminated against because Conway apparently treated an unidentified pair of Caucasian and Hispanic parents better than her, and because Caucasian and Hispanic lunch aides were allowed to work from 11:00am-1:00pm, whereas Conway

-2-

wanted to reduce Plaintiff's lunch aide hours to 11:45am to 1:00pm.  Plaintiff also alleges that she was discriminated against at Hurden Looker because the superintendent refused to meet with her, and because Vice-Principal Crystal Davis ("Davis") gave her a written reprimand.  The reprimand stated that Plaintiff had left her class unattended in the cafeteria for fifteen minutes while Plaintiff had a conversation with another adult, and that when Davis confronted her, Plaintiff responded in an insubordinate manner.  In response to Davis's written reprimand, Plaintiff wrote a rebuttal letter to the principal, Alphonsus Platt ("Platt").  Platt agreed to meet with Plaintiff to discuss the issues.  On April 18, 2007, Plaintiff received a negative performance evaluation from Davis citing problems with attendance, using time productively, getting along with colleagues and supervisors, and taking pride in her work.  Finally, at the end of the school year, Davis recommended that Plaintiff be terminated due to poor performance as well as a necessary reduction in work force.

On February 6, 2008, the EEOC sent Plaintiff a Notice of Right to Sue letter.  Plaintiff filed a Complaint in this Court on March 6, 2008, which she amended on March 18, 2008.  Defendant filed an Answer on April 21, 2008.  Currently before the Court is Defendant's motion for summary judgment.

## II.   STANDARD OF REVIEW

Pursuant to Rule 56, summary judgment shall be granted when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  Disputes over non-material facts may be resolved in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Where facts material to the outcome are at issue, however, the motion may not be disposed of by summary judgment.  Id. at 248.  The

moving party bears the burden of showing that no genuine issues of fact exist.  See Celotex, 477 U.S. at 330.  The non-moving party "may not rest upon the mere allegations or denials of his pleading," however, but must instead produce sufficient evidence to support a jury verdict in his favor.  See Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

III.   DISCUSSION

Before the Court is Defendant's motion for summary judgment on all claims.  Plaintiff's Complaint raises claims of race discrimination and retaliation under Title VII.  Because the Court finds that Plaintiff has not made a *prima facie* showing that the circumstances of the adverse employment actions give rise to an inference of discrimination, however, and because, alternatively, Plaintiff has not shown that Defendant's articulated reasons for taking the adverse employment actions were pretextual, summary judgment is granted.

A.   *Discrimination Claims*

Plaintiff first raises claims of race discrimination under Title VII, arguing that she suffered a series of adverse employment actions due to her race, including, *inter alia*, a reduction in her work hours, transfer to a different school, and termination.  Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual on account of their race.  See 42 U.S.C. § 2000e-2(a).  Race discrimination claims under Title VII are analyzed under the burden shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803 (1973).  Under this analysis, the claimant must first make a *prima facie* showing that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and  (4)  the  circumstances  of  the  adverse  employment  action  give  rise  to  an  inference  of

discrimination.  See Johnson v. Keebler-Sunshine Biscuits, Inc., 214 Fed. App'x 239, 241 (3d Cir. 2007).  If the plaintiff is successful in making this showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employee's adverse treatment.  Id.  If the defendant meets this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the defendant were merely a pretext for discrimination.  Id.  This may be accomplished by producing evidence that: (1) "casts doubt on the legitimate reason proffered by the employer such that a factfinder could reasonably conclude that the reason was a fabrication"; and (2) "allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination."  Id.

Here, summary judgment is appropriate because Plaintiff fails to make a *prima facie* showing of an inference of discrimination, and because she is unable to prove by a preponderance of the evidence that the Defendant's articulated non-discriminatory reasons for taking the alleged adverse actions were pretextual.  With respect to Plaintiff's alleged reduction in hours, for example, Defendant countered Plaintiff's claims of race discrimination by explaining that her hours were not actually being reduced, but were instead being returned to the twenty hours for which she had been formally approved.  Defendant explained that Plaintiff's hours beyond twenty had not been properly approved by the Board, and that part-time aides were not permitted to work more than twenty hours per week due to the expense of additional health benefits.  In response, Plaintiff raised only summary allegations that the Board had indeed approved her additional hours, and identified two aides at Hurden Looker who were "two out of the many" exceeding the twenty hour limit.  Plaintiff provides no details about the Board's alleged approval of her additional hours, however, and provides even less evidence supporting her claim that other aides exceeded the twenty hour limit.  In any event,

-5-

even if Plaintiff had raised sufficient evidence to create a genuine issue over whether she was properly approved for the additional hours and whether other aides were exceeding the twenty-hour limit, Plaintiff still has failed to provide any evidence showing that the circumstances of her alleged hours reduction raises an inference of discrimination.  She fails, for example, to identify whether the other two aides allegedly exceeding twenty hours were even members of a protected class. Accordingly, because Plaintiff has failed to make a *prima facie* showing of an inference of discrimination, and because Plaintiff has failed to offer evidence showing that Defendant's articulated reasons for reducing her hours were pretextual, her claim on this basis must be dismissed as a matter of law.

Similarly, with respect to Plaintiff's transfer from Calvin Coolidge to Hurden Looker, Defendant explained that Plaintiff was transferred away from Calvin Coolidge because she had demonstrated that she was unable to conduct herself in a professional manner at a school her child attended.  Specifically, the Board cited two incidents of alleged misconduct involving Plaintiff and her children at Calvin Coolidge—one in response to the alleged bullying of her third-grade daughter, and the other involving the attendance of her son at field day.  In response, Plaintiff again fails to raise any specific evidence in rebuttal, and instead counters Defendant's articulated reasons with only bare allegations of illegal intentions.  Plaintiff attempts to rebut the incident involving her third-grade child, for example, by noting that "the third grade child had bullied many children," and that there was "another aide with children" at the school who apparently was not transferred even though the parent "had similar issues as Plaintiff."  Similarly, with respect to the incident involving her son's attendance at field day, Plaintiff attempts to counter Defendant's explanation merely by noting that "many high school children [were] in attendance," and that "she was unaware that the helpers needed

-6-

a note from school." Plaintiff's bare allegations are insufficient to create an issue of fact upon which a factfinder "could reasonably conclude that [Defendant's] reason was a fabrication," or that would raise an inference that "discrimination was more likely than not a motivating or determinative" factor. Accordingly, Plaintiff's discrimination claim based upon her transfer to Hurden Looker is also dismissed as a matter of law.

Summary judgment is also appropriate on Plaintiff's claim to the extent that it is based upon her termination. Defendant presents significant evidence showing that Plaintiff's employment contract was not renewed after the 2006-07 school year: (1) as a necessary reduction in work force; and (1) due to Plaintiff's unsatisfactory work performance. In response, Plaintiff provides no evidence indicating that her employment was not eliminated as a necessary reduction in work force, and again provides only general allegations concerning the apparent deficiencies in her work performance. Furthermore, assuming *arguendo* that Plaintiff had provided evidence creating an issue of fact regarding her work performance, the record is still bereft of any evidence creating an inference of discrimination, or showing that Defendant's articulated reasons were pretextual.

Finally, to the extent that Plaintiff alleges discrimination based upon a series of incidents at both Calvin Coolidge and Hurden Looker that include, *inter alia*, not being permitted to work desired shift times, not being granted an opportunity to meet with the superintendent, being placed in the nurse's office instead of the cafeteria, and receiving a written reprimand, the Court again finds that Plaintiff has failed to make a sufficient *prima facie* showing that these incidents raise an inference of discrimination, and that, alternatively, Plaintiff has failed to rebut Defendant's articulated non-discriminatory explanations. With respect to the desired shift times, for example, Plaintiff alleges only that an unnamed Caucasian and Hispanic lunch aide were allowed to work from

11:00am-1:00pm, while Defendant tried to reduce Plaintiff's lunch hours to 11:45am-1:00pm. Defendant explained, however, that it was trying to reduce Plaintiff's hours to limit her to twenty hours per week, and that, in any event, the unnamed Caucasian and Hispanic aides were working only that two hour shift, and therefore were not similarly situated.  With respect to Plaintiff's attempt to meet with superintendent Bandlow, Plaintiff provides no support for her allegation that Bandlow refused to meet with her because of her race.  Similarly, with respect to Plaintiff's claim that she was assigned to the nurse's office, the Court first notes that Plaintiff has raised no facts showing an inference of discrimination in this assignment, and second that Defendant adequately explained that Plaintiff was assigned there in addition to her cafeteria hours in acquiescence to her request for more hours.  Plaintiff has failed to rebut this articulated reason with any evidence showing that it was a pretext.  Finally, Plaintiff presents no evidence showing that Davis's formal reprimand was based upon her race, nor does she provide evidence rebutting Defendant's non-discriminatory explanation that the reprimand was based upon the incident in the lunchroom at Hurden Looker wherein Plaintiff allegedly neglected to supervise her class and engaged in acts of insubordination.  Accordingly, the Court finds that summary judgment is appropriate.

        B.     *Retaliation Claims*

       Plaintiff's retaliation claims are also without merit.  Plaintiffs asserting a retaliation claim must demonstrate by a preponderance of the evidence that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action.  See Abramson v. William Patterson Coll. of N.J., 260 F.3d 265, 286 (3d Cir. 2001).  Upon making this *prima facie* showing, the burden "shifts to the

-8-

employer to articulate some legitimate non-retaliatory reason for the adverse action." See Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 199 (3d Cir. 1996).  If the employer comes forward with evidence showing some legitimate non-retaliatory reason, the employee may still produce evidence "sufficient to persuade the fact-finder by a preponderance of the evidence that the employer nevertheless harbored a discriminatory intent." Id.  An employee can make this showing by producing evidence and proving to the fact-finder's satisfaction that "the articulated reason is a pretext for the retaliation or that a discriminatory reason more likely motivated the employer." Id.

Here, because Plaintiff did not clearly explain her retaliation claim in her Complaint, it is not entirely clear upon what "protected employee activity" it is that her claim is based.  Nonetheless, the Court has identified two potential activities upon which Plaintiff's retaliation claim may be based: (1) her EEOC complaint filed on September 14, 2006; and (2) her rebuttal letter sent to Platt on December 20, 2006, responding to a formal reprimand by Davis on December 19, 2006. Additionally, the Court notes that Plaintiff's alleged reduction in hours and transfer to the Hurden Looker school occurred prior to her alleged protected activities in September and December 2006, thereby making those actions, as well as any actions that occurred during Plaintiff's tenure at Calvin Coolidge, an inadequate basis for her retaliation claim.  See Abramson, 260 F.3d at 286 (requiring that the adverse action be "after or contemporaneous with" the employee's protected activity).  It appears that Plaintiff's negative performance evaluation and eventual termination are the only adverse employer actions upon which Plaintiff's retaliation claim may be based.  In any event, because Plaintiff has failed to demonstrate a causal link between her protected activities and these adverse employer actions, judgment as a matter of law is appropriate.

To the extent that Plaintiff's retaliation claim is based upon her negative performance

-9-

evaluation, for example, the Court finds that Plaintiff has failed to produce sufficient evidence linking her negative evaluation to either her EEOC filing or her rebuttal letter. Defendant articulated legitimate, non-discriminatory reasons for Plaintiff's negative evaluation, including that Plaintiff had problems with attendance, taking directions from superiors, and that, during one particular instance in December 2006, she failed to properly monitor her class during the lunch period and committed several acts of insubordination. Plaintiff's rebuttal, however, fails to provide any evidence showing that Defendant's "articulated reason is a pretext for the retaliation or that a discriminatory reason more likely motivated the employer." Instead, Plaintiff responds only with conclusory allegations, including that Davis was "highly upset and seeked revenge," and that "[t]he negative evaluation was a form of retaliation because Mrs. Mentor submitted a rebuttal letter refuting the reprimand letter."[1] See Delli Santi, 88 F.3d at 199; see also Fed. R. Civ. P. 56(e). Plaintiff's evidence of similarly situated individuals who did not receive negative evaluations despite demonstrating similar deficiencies, for example, is limited to the summary statement that, "[t]here were several aides [whose] evaluations were needing improvements." Furthermore, while the Court recognizes that the timing of an adverse action may by itself be sufficient to set out a *prima facie* case of retaliation, see Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989), the Court nonetheless finds that, in this context, any inferences that may be drawn from the four-month interim period between Plaintiff's

---

[1]Additionally, the Court questions whether Plaintiff's reprimand rebuttal letter is even the type of "protected employee activity" that is covered by Title VII. Protected activities under Title VII typically involve an action taken in response to some type of discriminatory conduct. See Barber v. CSX Distribution Servs., 68 F.3d 694, 701–02 (3d Cir. 1995). Here, Plaintiff's rebuttal letter provides no indication that it was being sent to oppose discriminatory conduct, and instead appears to be merely a general complaint about unfair treatment. See id. Because the Court finds that summary judgment is appropriate on other grounds, however, it need not decide this issue here.

rebuttal letter and her negative evaluation are insufficient to support a finding that Defendant's articulated reasons are pretextual.  Accordingly, because the Court finds that Plaintiff failed to establish a causal link between her negative performance evaluation and her protected activities, her retaliation claim on this basis is dismissed as a matter of law.

Nor has Plaintiff produced sufficient evidence to establish a causal link between either of her protected activities and her termination.  Defendant responded to Plaintiff's claim with evidence showing that Plaintiff was terminated due both to her unsatisfactory work performance and to a necessary reduction in the work force.  In rebuttal, Plaintiff again provides only conclusory allegations, noting, for example, that Defendant had a "conspiracy to have Plaintiff quietly removed without alarms," and that Ms. Davis's allegations of poor work performance are "false and [a] complete continuation [of] the other conspirators."  Indeed, Plaintiff's only response to Davis's specific allegations of insubordination and poor work performance is merely that, "[Plaintiff] accepted direction[s] well, and followed all the rules."  Such summary statements, however, fail to show that Defendant's articulated reasons for terminating Plaintiff were a pretext, and certainly are inadequate to persuade a fact-finder by a preponderance of the evidence that Defendant harbored a discriminatory intent.  See Delli Santi, 88 F.3d at 199.  Accordingly, because the Court finds that Plaintiff has failed to establish a sufficient causal link between her protected activities and her eventual termination, summary judgment is also appropriate on Plaintiff's retaliation claim.

C.      *Pro Bono Counsel Application*

Finally, Plaintiff's application for pro bono counsel is also denied.  Courts considering an application for pro bono counsel must determine as a threshold matter whether the claim has some merit in fact and law.  See <u>Tabron v. Grace</u>, 6 F.3d 147, 155 (3d Cir. 1993).  Because the Court has dismissed all of Plaintiff's claims as a matter of law, her pro bono application is also denied.

**IV.   CONCLUSION**

For the foregoing reasons, the Court finds that Defendant's motion for summary judgment is **granted**, and that Plaintiff's application for pro bono counsel is **denied**.  An appropriate Order accompanies this Opinion.


                                             S/ Dennis M. Cavanaugh
                                            Dennis M. Cavanaugh, U.S.D.J.

Date:   July   27 , 2009
Orig:   Clerk
CC:     All Counsel of Record
        Hon. Mark Falk, U.S.M.J.
        File

-12-